## COMMERCIAL PRINTING & LETTER SERVICE CO. v. O'KEEFE.
### (No. 2981.)

Court of Civil Appeals of Texas. Amarillo. March 7, 1928.

Rehearing Denied April 4, 1928.

**Landlord and tenant ⬳48(1)—Lessor's breach of lease by failure to furnish heat held question for jury, notwithstanding provision excusing temporary failure to heat premises.**

Evidence of repeated failure of lessor to furnish heat for leased premises, as required by lease, *held*, to make issue for jury as to breach of lease in lessee's action for resulting damage to his business, notwithstanding provision in lease which exempted lessor from liability for temporary failure to furnish heat.

Error from District Court, Dallas County; Thomas A. Work, Judge.

Action by the Commercial Printing & Letter Service Company against R. W. O'Keefe. Judgment for defendant, and plaintiff brings error. Reversed and remanded.

Turner & Rodgers and C. R. Winn, all of Dallas, for plaintiff in error.

Clark & Clark, of Dallas, for defendant in error.

HALL, C. J. On the 24th day of April, 1922, plaintiff in error leased from defendant in error, O'Keefe, certain premises on Main street, in the city of Dallas. The leased premises consisted of something like 3,000 feet of floor space. The written lease contained this stipulation:

"The rent of an office will include occupancy of office, steam heat when necessary, electric lights, electric fans, when necessary, refrigerated water and drinking fountains in main corridors, and elevator service from 7:30 a. m. until 9:00 p. m."

Plaintiff in error alleged that it moved into the premises about the 1st of May, 1922, and that from that time up to and including the late autumn months of 1923, and the winter months of 1924, plaintiff in error complained to O'Keefe's agent of the failure, on the part of O'Keefe, to comply with the foregoing stipulation, and failure to furnish sufficient heat to enable plaintiff in error to conduct his business, which was that of a commercial printing and letter service, consisting in the typing and printing of personalized letters, cards, etc. It is further alleged, with sufficient detail, that because of the default on the part of O'Keefe to furnish sufficient heat during the period specified, plaintiff could not carry on its business and was thereby damaged in the sum of $1,806. O'Keefe pleaded, in defense, the third provision of the contract, which is, in part, as follows:

"That the said lessor shall not be liable for any damage to personal property sustained by the lessee * * * or for temporary default on the part of the said lessor to furnish steam, lights, water or power, or by reason of accident to the machinery in said building."

A jury was impaneled, and after both sides had closed, in the introduction of testimony, the court peremptorily instructed the jury to return a verdict for O'Keefe, which was done, and judgment was entered upon said verdict.

It is first insisted by plaintiff in error that the evidence is sufficient to make a prima facie case of a breach of the contract to furnish heat, and that the evidence is also sufficient to establish the damages suffered by plaintiff in error and of notice required for the recovery of such damages, the third contention being that plaintiff's testimony showed that the numerous breaches of the lease contract by defendant in error were more than temporary in their character and extent.

It appears from the record that the court's action in directing a verdict was predicated upon the last above-quoted provision of the contract, which relieved the lessor of damages resulting from a temporary default in furnishing heat.

Whether, under the evidence, the court was warranted in directing a verdict, is the sole question to be considered.

W. M. Newman, who was president and general manager of the plaintiff company in 1924, testified that there were radiators for steam heat in the premises occupied by his company, as the only facilities for heating the room; that there were gas jets, without gas in them, and no stoves; that one winter, a great number of times the employees of the company could not work; that the girls operating the typewriters tried to do a little work, secured all the coats and sweaters and things they could find and put them on, and did what actually had to be done; that the male employees wrapped themselves up and did only what was absolutely necessary to be done at that time; that the company was

---

crowded with a heavy line of customers. He said that these conditions existed on the 4th, 5th, 11th, 14th, 21st, and 27th days of January, on the 19th, 20th, 22d, 26th, and 27th days of December, prior thereto, and on the 4th, 5th, 21st, and 27th days of February of 1925. He further said that during December, January, and February, he went to Ryan, the manager of the building, and told him that his company would have to have heat in order to carry on their work; that Ryan said it was hard, but he would not buy it and did not have sufficient revenue to do so; that there were nine months between January and February, and December, 1924, that the boiler could have been repaired and that Ryan said· he would not stand the expense. He further testified that Ryan personally attempted to fix the boiler, and something would happen to it and he would turn off all the heat to let the boiler cool and would tell plaintiff's employees to go home about 11:30 and to be back at 2 o'clock; that the rag in the boiler would blow out and it was all off again.

Miss Oliver, one of the typesetters for the plaintiff company for six years, testified that she worked in that capacity in 1924, and that on days when it was cold, it was very uncomfortable for all of the employees'; that there were cracks around the windows where air would come in; and that it was very uncomfortable every time it was cold. She said she went home one day in December, she could not give the exact date, because it was cold, and that it was very uncomfortable right after Christmas, and that the employees, on that account, could not do their work very well.

Another employee, who had worked for plaintiff about three years as a typesetter, said that in January and February it was very uncomfortable, and on account of the cold she was'not able to work much in the premises; that her hands would get cold and stiff; she could hardly use them at all; that there were plenty of cold days in December just before Christmas, and one spell so cold they could not work at all.

Miss Lancaster testified that she was stenographer for plaintiff and began work for them about the first of January in the building in question; that for two or three days they did not have any heat at all; that the radiators were old ones, did not have enough steam; that she was there just before Christmas'when they did not have any heat at all until about 10 o'clock, and that the manager, Newman, told the employees to go home and that the next day there was no heat; that they were able to work a little bit during the next. week, but not very much.

W. M. Newman testified that he was working in the premises in question in January and February, and that the premises were just too cold to work and the employees had to be let off, but that a few of the men worked, with their overcoats on, on rush work that had to go.

While the evidence is conflicting upon this issue, we think the court erred in holding that the failure to furnish heat, as O'Keefe was required by the contract to do, was temporary. The contract bound O'Keefe to furnish heat enough to make the premises ·comfortable for plaintiff's employees, and this testimony raised the issue as to whether this term of the contract was complied with during three months of the term, and, in our opinion, it was an issue of fact which should have been submitted to the jury. Ollwerter v. Escher, 78 Misc. Rep. 154, 137 N. Y. S. 881.

For the reason stated, the judgment is reversed and the cause is remanded.

RANDOLPH, J., not sitting.